**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| POLYFORM A.G.P., INC., PLASTIQUES CELLULAIRES POLYFORM, INC., and NUDURA, INC., <br><br> Plaintiffs / Counter Defendants, <br><br> v. <br><br> XTREME INSULATION TECHNOLOGIES, LLC, TERRA LOGIC BUILDING PRODUCTS, INC., and COOPER STEWART, <br><br> Defendants / Counter Claimants. | Civil No. 17-735 (JRT/LIB) <br><br><br> **MEMORANDUM OPINION AND ORDER DENYING MOTION FOR A PRELIMINARY INJUNCTION** |

Aaron M. Johnson and Christopher J. Sorenson, **MERCHANT & GOULD PC**, 80 South Eighth Street, Suite 3200, Minneapolis, MN 55402, for plaintiffs / counter defendants.

Douglas C. Mezera and R. John Bartz, **BARTZ & BARTZ, PA**, 6950 France Avenue South, Suite 119, Edina, MN 55435, for defendants / counter claimants.

Plaintiffs Polyform A.G.P., Inc., Plastiques Cellulaires Polyform, Inc., and Nudura, Inc. (collectively, "Polyform") bring this patent-infringement action against Defendants Xtreme Insulation Technologies, LLC, Terra Logic Building Products, Inc., and Cooper Stewart (collectively, "Xtreme"). Polyform and Xtreme offer competing insulated concrete form ("ICF") products. Polyform contends that Xtreme's ICF products infringe Polyform's U.S. Patent No. 6,792,729 ("the '729 patent"). Polyform moves for a preliminary injunction, seeking to prevent Xtreme from selling their ICF

products. Because, at this early stage of the case and on a limited record, the Court cannot find that Polyform is likely to succeed on the merits and because the threat of irreparable harm is unclear, the Court will deny Polyform's motion.

## BACKGROUND

The '729 patent, titled "Stackable Construction Panel System," describes an improvement to ICF products, or as stated in the '729 patent, "stackable wall forms . . . having pairs of opposed panels for receiving flowable materials such as concrete." (Compl., Ex. A ("'729 Patent") at 1:6-9, Mar. 9, 2017, Docket No. 1.) Generally, "[o]nce the concrete is solidified, the assembled wall forms remain in place to insulate the wall." (*Id.* at 1:19-20.) Claim 1 of the '729 patent recites:

> A wall form for receiving a flowable material, comprising:
> a pair of foam panels each having opposed top and bottom wall surfaces; and
> a connector for tying together said foam panels in spaced and parallel relationship along a longitudinal direction, said connector comprising a pair of elongated anchor members each embedded longitudinally inside a corresponding one of said foam panels, each of said anchor members having two opposed extremities and a head piece projecting from each of said extremities along the longitudinal direction, the head pieces each having a terminal surface extending transversally and along a portion of a corresponding one of the top and bottom wall surfaces of the corresponding foam panel, the connector further comprising a connecting member for connecting longitudinally the anchor members of the pair together;
> wherein each of the top and bottom wall surfaces of each of the foam panels is provided with alternating projections and recesses, the head pieces each being embedded into one of said projections.

(*Id.* at 8:40-61.)

Polyform contends that it has become a "leader[] in the ICF industry in Canada, Europe, and the United States"; it has been "instrumental in establishing building codes in Canada and the United States to enhance the safety and uniform construction of buildings utilizing ICF technology"; and it has "invested heavily and incurred great expense in developing a market for [its] Nudura ICFs and in developing, training, and maintaining a network of distributors in Canada, Europe, and throughout the United States." (Decl. of Murray Snider ("Snider Decl.") ¶¶ 6-7, June 5, 2017, Docket No. 14.)

Xtreme also manufactures and sells ICF products. (Decl. of Paige S. Stradley ("Stradley Decl.") ¶¶ 2-3 & Exs. A-B, June 5, 2017, Docket No. 16.) Polyform contends that Xtreme's ICF products have been used in at least one construction site in Illinois. (Snider Decl. ¶ 13.) Xtreme's website contains testimonials regarding its ICF products. (Stradley Decl., Ex. C.)

## ANALYSIS

### I. STANDARD OF REVIEW

In deciding whether to grant a preliminary injunction, the Court considers four factors: (1) the likelihood of success on the merits (2) the likelihood of irreparable harm (3) the balance of equities; and (4) the public interest. *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014). "These traditional four factors 'apply with equal force to disputes arising under the Patent Act.'" *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "[A] preliminary injunction is a drastic and extraordinary remedy

that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). The Court will not grant a preliminary injunction unless a movant establishes both a likelihood of success on the merits and irreparable harm. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

## II. LIKELIHOOD OF SUCCESS ON THE MERITS

To establish a likelihood of success on the merits, "the patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). Accordingly, "[a]n accused infringer can defeat a showing of likelihood of success on the merits by demonstrating **a substantial question of validity or infringement**." *Trebro Mfg., Inc.*, 748 F.3d at 1165 (emphasis added). Xtreme contends that it has established a substantial question as to both infringement and validity.

The Court notes that at this early stage of proceedings, determining the likelihood of success on the merits is challenging, particularly because the parties dispute the proper construction of several relevant claim terms. Xtreme need only show a substantial question as to infringement or validity, and the Court finds it has done so.

### A. INFRINGEMENT

#### 1. "embedded"

Xtreme first points to the requirement in claim 1 of the '729 patent that the "anchor members [be] embedded longitudinally inside a corresponding one of said foam

panels" and that the "head pieces [be] embedded into . . . said projections." ('729 Patent at 8:46-48, 8:60-61.) Xtreme points to a dictionary definition of "embed," which states "to fix into a surrounding mass." (Decl. of R. John Bartz ("Bartz Decl."), Ex. H, June 19, 2017, Docket No. 21.) Based on that definition, Xtreme argues that the phrase "embedded into" requires that the anchor member be fixed such that it cannot move. Xtreme contends that its anchor members are not embedded in the foam panels because they slide into the foam panels prior to use, and thus, they are not embedded – in the sense of "fixed."[1]

Polyform disputes Xtreme's definition of "embedded"; but, Polyform argues that even if the Court were to adopt that construction, Xtreme's products would satisfy the term once assembled. (Decl. of Stephen V. Skalko ("Skalko Decl.") ¶¶ 18-19, June 26, 2017, Docket No. 31.) In fact, Xtreme advertises products in wall form – where it appears that the anchor members are already immobile. (*See* Stradley Decl., Ex. A.) And a seller can be indirectly liable for patent infringement for selling a disassembled product if it would directly infringe after assembly. *See* 35 U.S.C. § 271(b)-(c); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1362-63 (Fed. Cir. 2006) (finding indirect infringement where defendant sold disassembled device which instructions for customers

---

[1] Xtreme also argues that its alleged head pieces are not "embedded" in the projections because they are not contained entirely within a projection. But, at least on the current record, the '729 patent does not appear to require that the head pieces be entirely contained within a projection as there is at least one preferred embodiment disclosed in the '729 patent that would not fit such a requirement. (*See* Skalko Decl. ¶ 17.) A "claim construction that excludes a preferred embodiment is 'rarely, if ever, correct.'" *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1304 (Fed. Cir. 2015) (quoting *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007)).

to assemble to infringing device); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 19-20 (Fed. Cir. 1984). Thus, Xtreme could still be indirectly liable for inducing or contributing to their customers' direct infringement because, once assembled, the anchor members are fixed and cannot move. (*See* Compl. ¶¶ 22-25); *MEMC Elecs. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379 (Fed. Cir. 2005) ("Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe." (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005))). Thus, based on the current record, the Court is not convinced that Xtreme has established a significant question as to infringement with regard to the "embedded" limitation.[2]

---

[2] Additionally, Xtreme argues that Polyform cannot rely on combining Xtreme's two "webs" to establish the claim limitation of each anchor member having two head pieces that are each embedded in a projection. (*See* '729 Patent at 8:46-50, 8:60-61.) Xtreme argues that the anchor members must be fixed to two projection-embedded head pieces, and Xtreme's webs each connect only to one allegedly embedded head piece, and connect to the second web via teeth at the midpoint of the foam blocks. (Decl. of Cooper Stewart ("Stewart Decl.") ¶¶ 11-12, June 19, 2017, Docket No. 22.) Xtreme contends that Polyform cannot rely on the combination of the two webs to meet the claim requirement (that the anchor member has two head pieces) because the language was added by amendment, and thus, Polyform cannot rely on the doctrine of equivalents. (Bartz Decl., Ex. E at 5.) However, Xtreme does not fully support its argument at this time, and the Court does not rely on it as a substantial question as to infringement. "[F]or prosecution disclaimer to attach [Federal Circuit] precedent requires that alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008) (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003)). Xtreme makes no attempt to establish the reason for the amendment that it relies on, and it is not immediately apparent that the amendment was meant to disclaim multiple webs combined to form one connector.

### 2. "terminal surface extending transversally, and along a portion" of the wall surface

Xtreme next relies on the following claim limitation: "the head pieces each having a terminal surface extending transversally, and along a portion of a corresponding one of the top and bottom wall surfaces of the corresponding foam panel." ('729 Patent at 8:51-54.) Xtreme cites a dictionary definition for "transverse" as "lying or extending across or in a cross direction." (Bartz Decl., Ex. J.) But the meaning of "transversally" must be read in context of the entire claim and in light of the specification as understood by a person of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1311-19 (Fed. Cir. 2005). Here, claim 1 includes references to "a longitudinal direction" or "longitudinally." ('729 Patent at 8:45, 47, 51, 56.) The Court finds that, on the current record, the proper interpretation of "transversally" is unclear, particularly because the contrasting references to items located "longitudinally" or to the "longitudinal direction" do not easily lend themselves to a single definition.[3]

Polyform does not argue for a particular meaning for the term "transversally," but instead contends that it would succeed under any possible definition. Polyform points to the following photo of one of Xtreme's products:

---

[3] Claim 1 of the '729 patent uses the terms "longitudinally" or "longitudinal direction" four times: the connector ties together the "foam panels in a spaced and parallel relationship along a longitudinal direction," ('729 Patent at 8:44-45); the anchor members are "embedded longitudinally" within the foam panels, (*id.* at 8:46-48); the head piece extends from the anchor members' extremities "along the longitudinal direction," (*id.* at 8:49-51); and finally, the connector connects the anchor members together "longitudinally," (*id.* at 8:55-57). Based on the current record and arguments, and viewing all of these references together, the Court cannot determine which direction "longitudinal" refers to in the '729 patent.



(Skalko Decl. ¶ 24.) Polyform contends that A, B, and C in the photo are all "terminal surfaces," and that "terminal surface (A) extends in the left (horizontal) direction; terminal surface (B) extends in the vertical direction; terminal surface (C) extends in the right (horizontal) direction." (*Id.*)

The Court, however, does not find the infringement analysis as clear as Polyform suggests. For example, none of the terminal surfaces discussed ((A), (B), or (C) in the image above) extend inwardly or outwardly along the wall – they maintain the same vertical plane – and thus, if extending transversely (as opposed to longitudinally) requires that a terminal surface extend inward or outward (crossing the upward movement of the head piece), Xtreme's product may not contain a qualifying "terminal surface." Additionally, the terminal surfaces in Xtreme's product do not extend outward in any direction beyond the width of the anchor member throughout the wall; instead, they

maintain the same dimensions throughout the wall.[4] (*See* Decl. of Cooper Stewart ("Stewart Decl."), Exs. C & D, June 19, 2017, Docket No. 22.)

Relatedly, Xtreme argues that claim 1's inclusion of the word "and" in "extending transversally and along a portion of" the top or bottom wall surfaces means that the "extending transversally" and "along a portion" of the wall surface are two distinct requirements, which further suggests that the "transversally" requirement does not solely require that the terminal surface extend along the top or bottom wall surface. Under Xtreme's view, even though a surface (such as (A) or (C) above) extends along a wall surface, that does not automatically mean that either is a qualifying "terminal surface"— it must also satisfy the limitation that the surface extend "transversally."

Finally, Xtreme contends that the "along a portion" of the surface wall limitation requires that the terminal surface have some width distinct from the anchor members, and, in Xtreme's products, the terminal surface does not have any width (along the wall) broader than the anchor member (that runs up and down the wall).

Polyform responds that Xtreme's products meet this limitation under the doctrine of equivalents. "The doctrine of equivalents prevents a copyist from evading patent claims with insubstantial changes." *Valmont Indus., Inc. v. Reinke Mfg., Co.*, 983 F.2d 1039, 1043 (Fed. Cir. 1993). Under the doctrine of equivalents, a court considers

---

[4] It appears that the width of the anchor member is the same for much of the wall, aside from the partial vertical extension based on the presence of a projection or a recess (depicted by terminal surface (B) in Polyform's diagram). While the width of the anchor member changes in this way, it is a narrowing of the width rather than an extension. Additionally, it is not clear if terminal surface (B) could satisfy the limitation because it extends vertically, and it is not clear whether a vertical extension – a continuation of the anchor member vertically – would satisfy the extending "transversally" requirement.

whether the accused device "performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention." *Id.* (quoting *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987)).

Here, Polyform applies the doctrine of equivalents broadly, stating that "[t]he orientations of the terminal surfaces of (A), (B) and (C) function in the same manner, and in the same way, with the same result, facilitating two spaced apart panels between which the pouring of concrete is permitted." (Pls.' Reply Mem. at 17, June 26, 2017, Docket No. 29; *see also id.* at 19.) But the doctrine of equivalents does not cover all alternative compositions that function in the same manner and obtain the same result. For example, Polyform cannot use the doctrine of equivalents to broaden the scope of its claims to encompass what is already in the public domain. *Intendis GMBH v. Glenmark Pharms. Inc., USA*, 822 F.3d 1355, 1363-64 (Fed. Cir. 2016); *Wilson Sporting Goods Co. v. David Geoffrey Assocs.*, 904 F.2d 677, 683 (Fed. Cir. 1990) ("[T]here can be no infringement if the asserted scope of equivalency of what is literally claimed would encompass the prior art."), *overruled in part on other grounds by Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993). To determine the scope of equivalents possibly claimed, some courts "visualiz[e] a *hypothetical* patent claim, sufficient in scope to *literally* cover the accused product" and then consider whether the Patent Office could have approved the claim over the prior art. *Wilson Sporting Goods Co.*, 904 F.2d at 684. As discussed below with regard to Xtreme's obviousness argument, several prior-art references separately contain

many elements of the '729 patent; in light of those references, the permissible scope of the doctrine of equivalents in this case is not entirely clear.[5]

Overall, the Court finds that Xtreme has established a substantial question over whether Xtreme's products contain "a terminal surface extending transversally and along a portion of" the top or bottom wall surface. While the Court does not now reach any conclusion as to the proper construction of this claim limitation, the Court finds that it cannot conclude that Polyform is likely to succeed on the merits given the lack of clarity regarding several relevant claim terms.

B.     OBVIOUSNESS

Xtreme also argues that a preliminary injunction is inappropriate because it has asserted a substantial question of invalidity. Because the alleged infringer need only "raise[] a 'substantial question' of invalidity" at the preliminary injunction stage, "[t]he burden on the accused infringer . . . is lower than what is required to prove invalidity at trial." *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005-06 (Fed. Cir. 2009) (quoting *Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1351 (Fed. Cir. 2007)). If the accused infringer shows a substantial question of invalidity, "the burden shifts to the patentee to show that the defense lacks substantial merit." *Id.*

Because the Court has already found that Polyform has failed to establish a likelihood of success on the merits due to Xtreme's non-infringement arguments, the

---

[5] Moreover, the parties to date have not fully engaged in the two-step, hypothetical claim analysis to determine the permissible scope of Polyform's claims under the doctrine of equivalents. *See Intendis GMBH*, 822 F.3d at 1363-64.

Court need not thoroughly discuss Xtreme's obviousness challenge, which is an alternative argument regarding likelihood of success on the merits. The Court merely notes that Xtreme has raised significant questions as to obviousness based on three prior-art patents: U.S. Patent 5,428,933 ("Philippe"), U.S. Patent No. 5,896,714 ("Cymbala"), and U.S. Patent No. 5,459,971 ("Sparkman"). (Stewart Decl. ¶¶ 4, 16-42 & Ex. A.) But the Court also notes one potential roadblock to Xtreme's argument because, on the current record, it is not clear that any of the prior-art references contain "head pieces . . . embedded into . . . projections." ('729 Patent at 8:60-61.) Regardless, the Court finds a substantial question as to infringement, and thus, the Court cannot find Polyform is likely to succeed on the merits.

### III. IRREPARABLE HARM

"[T]he irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). "[T]he simple fact that one could, if pressed, compute a money damages award does not always preclude a finding of irreparable harm." *Id.* "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm. *Id.* (citing *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008)).

Polyform contends that it will face irreparable harm if Xtreme continues selling the accused products. Polyform contends that it faces lost sales and the loss of the benefit of its patented features, including a loss of market share. Potential lost sales alone,

however, do not establish irreparable harm; "acceptance of that position would require a finding of irreparable harm to every manufacturer/patentee, regardless of circumstances." *Abbott Labs v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) (quoting *Ill. Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990)). For the same reason, "lost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a preliminary injunction." *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009).

The Court does not find sufficient evidence of irreparable harm to warrant a preliminary injunction. Polyform provides no evidence regarding the current state of the ICF market or evidence that it has lost market share. Polyform contends that it risks damage to its customer relations and goodwill; however, Polyform does not provide evidence of price erosion. *See id.* at 301-02. Finally, Polyform contends that it could face damage to customer relations based on customers trying Xtreme's "inferior products" or not receiving sufficient training on how to use ICFs, turning customers away from ICFs generally. But Polyform provides no evidence suggesting that Xtreme's products are inferior or that they are sold with insufficient training. Accordingly, the Court finds that the irreparable harm prong is, at best, neutral and does not favor an injunction. *See Abbott Labs*, 452 F.3d at 1348 ("[W]here a patentee has not shown a likelihood of success on the merits, and where the patentee has not clearly established that monetary damages could not suffice but the defendant has not established that monetary damages do suffice, we cannot say that the irreparable harm prong of the analysis favors either party.").

**IV.    BALANCE OF HARMS AND PUBLIC INTEREST**

Because the Court finds Polyform has failed to establish a likelihood of success on the merits and irreparable harm sufficient to warrant a preliminary injunction, the final two factors – balance of harms and public interest – would not change the outcome of Polyform's motion.  *See Amazon.com, Inc.*, 239 F.3d at 1350 ("Our case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes *both* . . . likelihood of success on the merits and irreparable harm.").  The Court notes, however, that neither factor weighs in favor of an injunction.

Xtreme contends that the balance of harms weighs in its favor because it is a small company and a preliminary injunction would put it out of business.  *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) (finding "the 'balance of hardships' assesses the relative effect of granting or denying an injunction on the parties," and a district court should consider several factors in its analysis including "the parties' sizes, products, and revenue sources").  While Xtreme does not provide evidentiary support for its purported harm, it is undisputed that Xtreme is selling the accused products as part of its business, and thus, common sense dictates that it would suffer harm from being forced to stop such sales.  In light of this harm and the substantial question of infringement that Xtreme raises, the Court finds that the balance of the harms weighs in Xtreme's favor or – crediting Polyform's alleged irreparable harm – remains neutral.

Polyform contends that the public interest weighs in favor of the patent-holder. *See, e.g., Automotive Prods. Plc v. Tilton Eng'g*, No. 90-5500, 1993 U.S. Dist. LEXIS 20811, at *5 (C.D. Cal. Nov. 29, 1993). But where the patent-holder has not established a likelihood of success on the merits, the public interest weighs against granting an injunction. *See Abbott Labs*, 452 F.3d at 1348. Accordingly, the Court finds that the public interest weighs against granting a preliminary injunction because Polyform has not established a likelihood of success on the merits.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction [Docket No. 11] is **DENIED.**

DATED: October 11, 2017　　　　　　　　　_____s/John R. Tunheim_____
at Minneapolis, Minnesota.　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　United States District Court